BRIANA PETERSON

       v.                             C.A. No. 14-63-ML

NEW ENGLAND INSTITUTE OF TECHNOLOGY

**MEMORANDUM AND ORDER**

Plaintiff Briana Peterson ("Peterson") has brought claims of hostile environment and retaliation against defendant New England Institute of Technology ("NEIT") pursuant to Title IX of the Education Amendment, 20 U.S.C. § 1681(a). Complaint (Dkt. No. 1). The case is before the Court on NEIT's motion to stay or dismiss the proceedings and compel arbitration. (Dkt. No. 10).

**I. Factual Background and Procedural History**

On March 9, 2011, Peterson enrolled as a student at NEIT. On the same date, Peterson signed an enrollment agreement (the "Enrollment Agreement")(Dkt. No. 8) which included a dispute resolution provision (the "Arbitration Provision"). According to Peterson's complaint (the "Complaint")(Dkt. No. 1), in May of 2012, she was enrolled in a course titled "Police Operation." The course was taught by a male adjunct faculty member (the "Instructor"), who was also employed as a police officer in Rhode

Island. Complaint ¶¶ 5, 6. The Complaint alleges in some detail that the Instructor made a number of unwanted sexual advances toward Peterson—including via text message—and that the Instructor subjected Peterson to sexual and offensive comments in front of her peers. Complaint ¶¶ 7-12.

Peterson reported the offensive conduct to the school administration and met with a school administrator. Complaint ¶¶ 13-14. According to Peterson, she was advised by NEIT representatives that she should not return to any of her classes until an investigation of her allegations had been completed. Complaint ¶ 15.

Peterson states that, as a result of the sexual harassment, she suffered from sleeplessness, anxiety, and stress, for which she sought medical help. Complaint ¶ 16. Her doctor prepared a note for NEIT, advising the school that preventing further conduct between Peterson and the Instructor was a medical necessity. Id.

On May 25, 2012, Peterson was informed by NEIT that the Instructor had been found in violation of NEIT's "Policy Against Unlawful Harassment, Discrimination and Retaliation," Complaint ¶ 18, which prohibits, *inter alia*, romantic or sexual relationships between faculty members and their students, as well as retaliation against students for making a complaint. NEIT's Mem.

at 2 (Dkt. No. 6-3). Peterson returned to class the following school day and took her final exam for Criminal Procedure—which was taught by a different officer who served in the same police department as the Instructor. Complaint ¶¶ 19, 21. Subsequently, Peterson was informed that she had failed that course due to "excessive absenteeism," and that her final exam had not been considered for her grade. Complaint ¶ 20.

Peterson alleges that she notified NEIT of these events; that NEIT "failed to take remedial action;" and that, as a result, she suffered extreme emotional distress, lost employment and educational opportunities, and incurred financial losses. Complaint ¶ 24. According to a declaration by NEIT's admissions officer, Peterson successfully completed the program in Criminal Justice in the fall 2012 quarter and was awarded an associate's degree. Decl. of Thomas F. Piette ("Piette") at ¶ 4 (Dkt. No. 8).

On February 4, 2014, Peterson filed a two-count complaint in this Court, alleging hostile environment (Count I) and retaliation (Count II), in violation of 20 U.S.C. § 1681. Peterson sought actual and special damages, attorney's fees, damages for emotional distress, punitive damages, and injunctive relief[1]. On April 3, 2014, NEIT filed a motion to refer the case

---

[1] It is unstated what type of injunctive relief Peterson seeks. According to Piette's undisputed declaration, Peterson successfully graduated from NEIT in the fall of 2012. The March 2011 Enrollment

3

to arbitration and to stay or dismiss the proceedings. (Dkt. No. 6). Peterson responded with an objection on May 1, 2014 (Dkt. No. 10), to which NEIT filed a reply. (Dkt. No. 11). Neither party has requested oral argument on the matter.

**II. Standard of Review[2]**

Although it appears that the First Circuit has not yet addressed the issue, other courts have applied a summary judgment standard to a motion to compel arbitration. <u>Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.</u>, 636 F.2d 51, 54 & n. 9 (3d Cir.1980); <u>Boulet v. Bangor Securities, Inc.</u>, 324 F.Supp.2d 120, 123-124 (D.Me. May 26, 2004); <u>Cogent Computer Systems, Inc. v. Turbochef Technologies Inc.</u>, C.A. No. 06-280-S, 2008 WL 219343 at *5 (D.R.I. Jan. 24, 2008)(listing cases). Accordingly, this Court will consider NEIT's motion under that familiar standard.

**III. Discussion**

  A.  Arbitrability

Pursuant to Section 3 of the Federal Arbitration Act

---

Agreement states that Peterson's chosen program required six consecutive quarters. Those facts would indicate that Peterson's graduation occurred without delay.

[2] The Court notes that neither party to this litigation has addressed under which standard NEIT's motion is to be reviewed.

("FAA"), 9 U.S.C. § 3[3], a party can request the court to stay a judicial proceeding "when the matter before the court involves an issue governed by an agreement to arbitrate." Campbell v. General Dynamics Government Systems Corp., 407 F.3d 546, 552 (1st Cir. 2005). Under Section 4, 9 U.S.C. § 4, if one party to a suit refuses to arbitrate, the other party can "petition a district court to compel arbitration in accordance with the parties' preexisting agreement." Id.

The party bringing a motion to stay and compel arbitration has the burden to show the following:

(1) that a valid agreement to arbitrate exists;

(2) that the movant is entitled to invoke the arbitration clause;

(3) that the other party is bound by that clause; and

(4) that the claim asserted comes within the clause's scope.

Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 5

---

[3]

Section 3 of Title 9 states as follows:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

5

(1st Cir. 2014)(citing Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir.2011); Sourcing Unlimited, Inc., v. Asimco Int'l Inc., 526 F.3d 38, 46-47 (1st Cir. 2008); InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003).

The FAA has established a strong policy in favor of arbitration, see Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)(noting that Congress's intent "in passing the [FAA] was to enforce private agreements into which the parties had entered," which requires courts to "rigorously enforce agreements to arbitrate . . . at least absent a countervailing policy manifested in another federal statute.")

Accordingly, if there is any doubt whether a matter is arbitrable or not, federal policy requires that such doubt is resolved in favor of arbitration. McCarty v. Azure, 22 F.3d 351, 355 (1st Cir. 1994) (citing Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). "[I]f the contract language chosen by the parties is unclear as to the nature of the claims to which an agreement to arbitrate extends, a 'healthy regard' for the federal policy favoring arbitration requires that 'any doubts concerning the scope of an arbitrable issue be resolved in favor

6

of arbitration.'" Id.

However, "[l]ike any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command." Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Congressional intent "'will be deducible from [the statute's] text or legislative history' . . . or from an inherent conflict between arbitration and the statute's underlying purposes." Shearson/American Exp., Inc. v. McMahon, 482 U.S. at 227, 107 S.Ct. 2332 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)). "Having made the bargain to arbitrate, the party should be held to it unless [the legislature] itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. at 628, 105. S.Ct. 3346.

The First Circuit has recognized that "'while federal statutory claims can come within an arbitration agreement that is enforceable pursuant to the FAA, some federal statutory claims may not be appropriate for arbitration.'" Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d at 476 (quoting Campbell v. General Dynamics Government Systems Corp., 407 F.3d at 552 (citing Gilmer v. Interstate/Johnson Lane Corp.,

500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)).

In Soto-Fonalledas, the First Circuit confirmed its prior holding that "employers and employees may agree to submit Title VII and ADA claims to arbitration and that this does not violate congressional intent." 640 F.3d at 476 (citing Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 7–12 (1st Cir.1999); Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 148–51 (1st Cir.1998)).

The party resisting the arbitration has the burden "to show that Congress, in enacting a particular statute, intended to preclude a waiver of a judicial forum for certain statutory claims." Id.; Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)(affirming prior holding that "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.").

Moreover, "[t]he Supreme Court has made it clear that when a party challenges an arbitration agreement on the grounds that the agreement will prevent the party from vindicating his or her statutory rights, and the party's claim turns on a construction of ambiguous terms of the agreement, the challenge does not present a 'question of arbitrability' to be decided by a court, but rather an issue of contract interpretation to be resolved in

8

the first instance by an arbitrator." Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d at 476-477 (citing PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 407, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003); Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452-53, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003); Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 541, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995)). "[W]hen there is ambiguity about the scope of remedies limitation of an arbitration agreement, the arbitrator will decide the question of enforceability in the first instance." Kristian v. Comcast Corp., 446 F.3d 25, 45 (1st Cir. 2006)(citing PacifiCare Health Systems, Inc. v. Book, 538 U.S. at 407, 123 S.Ct. 1531, 155 L.Ed.2d 578).

B. The NEIT Abitration Provision

The Arbitration Provision in the NEIT Enrollment Agreement states as follows:

> NEIT and the student agree that any dispute arising out of or related to the student's enrollment at NEIT that remains unresolved after the parties participate in the procedures described in the NEIT Catalog or Student Handbook, shall be settled by binding arbitration conducted in Warwick, Rhode Island. The student understands that arbitration is final and binding, and that by agreeing to arbitrate, he/she is waiving certain rights, including but not limited to his/her right to litigate his/her dispute in court, including his/her right to a jury trial. NEIT and the student further agree that any communications, oral or written, of the parties or their agents, decisions of the arbitrator, as well as documents created for the arbitration, shall be deemed confidential and privileged, and shall not be disclosed to any third

9

party or admissible for any reason in subsequent litigation except to the extent necessary to enforce the award of the arbitrator which may be entered in any court having jurisdiction thereof. Fees and expenses of the arbitrator shall be paid by NEIT, unless otherwise ordered by the arbitrator.

C. The Limitation Clause

Under the heading "LIMITATION OF DAMAGES" (the "Limitation Clause"), the Enrollment Agreement provides the following:

> Student expressly agrees that NEIT's liability in connection with the student's enrollment or any other matter relating to this agreement will not exceed the cost of tuition and fees that student actually paid to NEIT minus any monies previously refunded. Regardless whether any remedy set forth herein fails of its essential purpose or otherwise, in no event will NEIT be liable to student for any special, incidental or consequential damages, whether based on breach of contract, tort, or otherwise arising from or caused directly by student's enrollment at NEIT." Enrollment Agreement (Dkt. No. 8).

D. The Parties' Positions

In this case, there is no dispute regarding the existence of an agreement to arbitrate; the Enrollment Agreement has been executed by both parties; and the asserted claims come within the scope of the broadly worded Arbitration Provision, *i.e.*, the claims arise "out of or related to [Peterson's] enrollment at NEIT." Peterson, however, resists arbitration on the ground that the Limitation Clause in the Enrollment Agreement "outright prohibits [her] from enforcing her statutory remedies." Pltf's. Obj. at 2 (Dkt. No. 10). Based on this provision, Peterson argues

10

that "the limitation on damages is so severe that it not only limits the remedy to the cost of tuition, but it limits it to the tuition actually paid by the student."[4] Pltf.'s Obj. at 4. She further suggests that, under this provision, the arbitrator "has no discretion or authority . . . to offer [her] the full range of statutory remedies to which she is entitled." Id.

In response, NEIT argues that "the applicability and meaning of the limitations clause are properly within the range of decisions invested in the arbitrator" because (1) "it is entirely speculative that application of the limitations clause in this case would interfere with [Peterson's] enforcement of her statutory rights," NEIT's Reply at 2 (Dkt. No. 11); and (2) there is no clear basis to conclude that the Enrollment Agreement's cap on monetary recovery contravenes Title IX's statutory purposes. Id. at 6, 6 n. 8.

Peterson, as the party resisting arbitration, bears the burden of proving that her claims are unsuitable for arbitration. Although Peterson acknowledges that "[t]he party resisting arbitration bears the burden" to establish that Congress intended to 'preclude a waiver of judicial remedies for the statutory

---

[4] As set forth in the Enrollment Agreement, as of March 2011, the total cost of tuition for Peterson's program was $37,650. (Dkt. No. 8). It is unstated whether this amount is different from the tuition Peterson has actually paid to NEIT.

11

rights at issue,'" Pltf.'s Obj. at 2, she only makes a general claim to be entitled to "the full range of statutory remedies." Id. Neither the Complaint nor Peterson's objection to NEIT's motion states with any specificity what statutory remedies she seeks and how the agreed-upon arbitral forum fails to provide a fair and adequate enforcement of her statutory rights.

In the Complaint, Peterson seeks (1) actual and special damages; (2) attorney's fees; (3) damages for emotional distress; (4) punitive damages; and (5) unspecified injunctive relief. Under the limitation of damages provision in the Enrollment Agreement, NEIT's liability is limited to "the cost of tuition and fees that [Peterson] actually paid to NEIT minus any monies previously refunded." The Enrollment Agreement does not address the prospect of injunctive relief and it is silent with respect to attorney's fees. In other words, Peterson only generally contends that her statutory rights are barred by the limitations clause.

E. Availability of Remedies

At least one of Peterson's requested remedies appears unavailable under Title IX. Although the First Circuit has not yet addressed this issue, other circuits have concluded that punitive damages are not available for private actions to enforce Title IX. Mercer v. Duke University, 50 Fed.Appx. 643, 644 (4th

12

Circ. Nov. 15, 2002)(citing Barnes v. Gorman, 536 U.S. 181, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002)); Frechel-Rodriguez v. Puerto Rico Dept. of Educ., 478 F.Supp.2d 191, 198 (D.P.R. March 22, 2007).

With respect to injunctive relief, the First Circuit has concluded that, generally, such relief[5] is available under Title IX. Cohen v. Brown University, 101 F.3d 155, 167 (1st Cir. 1996). "The right to injunctive relief under Title IX appears to have been impliedly accepted by the Supreme Court in Franklin. Id.(citing Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 76, 112 S.Ct. 1028, 1038, 117 L.Ed.2d 208 (1992). It is unclear from the Complaint, however, what type of relief Peterson is seeking.

Unlike in Title VII cases, there is no statutory cap on the amount of compensatory damages that may be awarded in Title IX claims. Although Peterson has provided no information about the extent of her alleged damages, she has asserted a claim for emotional distress that could, conceivably, limit any arbitration award of damages to the amount Peterson has paid to NEIT for tuition.

---

[5] The Court notes that Peterson's request for injunctive relief is entirely unspecified and it is unclear whether such relief is available to Peterson in this particular case, given that she has successfully graduated from NEIT and that her Complaint does not allege systemic violations of Title IX.

13

Finally, pursuant to 42 U.S.C. § 1988(b), a prevailing party in a Title IX claim may be awarded "a reasonable attorney's fee as part of the cost." 42 U.S.C. § 1988(b).

F. This Case

Peterson does not dispute that a valid agreement to arbitrate exists between the parties or that her claims fall within the scope of the Arbitration Provision. Peterson also fails to establish that Congress intended to preclude a waiver of judicial remedies in Title IX cases or that, generally, the remedies she seeks–to the extent they are available in a Title IX claim–are unsuitable for arbitration. Under those circumstances, the Court is of the opinion that Peterson has not met the requisite burden to withstand NEIT's request for arbitration. Because is conceivable, however, that the Limitation Clause restricts any arbitration award of damages for Peterson's claim for emotional distress to tuition payments made by Peterson, the Court deems dismissal of the proceedings prior to arbitration premature.

Accordingly, NEIT's motion to stay or dismiss proceedings and compel arbitration is DENIED, in part, and GRANTED, in part, and the Court makes the following rulings:

(1) The parties are ordered to participate in arbitration as set forth in the Enrollment Agreement.

(2) The case is stayed pending determination by the arbitrator whether Peterson's claims are arbitrable.

(3) This Court will retain jurisdiction of the case. In the event the arbitrator determines that (a) Peterson's claims are not arbitrable, or (b) Peterson's claim for emotional distress exceeds the limit imposed under the Limitation Clause, Peterson may then resume pursuit of her claims in this Court.

SO ORDERED.

/s/ Mary M. Lisi
Mary M. Lisi
United States District Judge

June 9, 2014